UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                               :

STUDIO A ENTERTAINMENT, INC.,  :

                               :

           Plaintiff,      :

                               :

    - against -      :

                               :

DIRECT DISTRIBUTORS, LLC,    :
BEN-ZION SUKY, DIADEM DIGITAL, :
INC., DISTRIBUTION L.H. INC.,  :
SABIN BRUNET, MARC BRIAU,   :
DIANE HEBERT, JACKY'S ONE STOP :
DISTRIBUTION, JACK ELKESLASSY, :
144942 CANADA, INC. d/b/a KAYTEL :
VIDEO DISTRIBUTION, ALAIN    :
ELMALEH, and ALAIN RICHER,   :

                               :

                               :

         Defendants.    :
------------------------------------------------------X

**OPINION AND ORDER**

06 Civ. 02275 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Studio A Entertainment, Inc. ("Studio A") is suing 144942 Canada,

Inc., d/b/a Kaytel Video Distribution ("Kaytel"), its president, Alain Elmaleh, and

its employee, Alain Richer, alleging violations of the Copyright Act, 17 U.S.C. §

101, *et seq.*, the Trademark Act, 15 U.S.C. § 1501, *et seq.*, and New York law.[1]

-----

    [1]    *See* Complaint ("Compl.") ¶ 12.

Kaytel and Elmaleh jointly move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  Richer moves separately on the same grounds.  For the following reasons, both motions are denied.

## II.   BACKGROUND

The basic facts of this case are not in dispute.  Studio A is a California corporation that has manufactured adult videos since at least 1994.[2] Kaytel is a Canadian corporation and a "leader in the adult video distribution industry in Canada."[3]  Elmaleh is the president of Kaytel and a Canadian resident.[4] Richer is an employee of Kaytel and also a Canadian resident.[5]

Studio A asserts both trademark protection and copyright protection in its works.  Around 1989, Studio A adopted the use of the trademark "Andrew Blake" for use in connection with its adult videos.[6]  Since that time, Studio A continually has used the mark, and after the mark had acquired a secondary

---

[2]      *See id.* ¶ 14.

[3]      *See* Declaration of Alain Elmaleh in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Elmaleh Decl.") ¶ 2.

[4]      *See id.* ¶ 1.

[5]      *See* Declaration of Alain Richer in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Richer Decl.") ¶¶ 1-2.

[6]      *See* Compl. ¶ 24.

meaning denoting Studio A, the company registered "Andrew Blake" with the United States Patent & Trademark Office.[7]  During the ten years between 1994 and 2004, Studio A secured exclusive rights and privileges, including registrations with the United States Copyright Office, in several adult movies, including the twenty-one movies at issue in this case.[8]

Many of the remaining facts in this case are hotly contested.  In 2005, Studio A learned that bootleg DVD copies of its videos were being sold at very low prices.[9]  Studio A alleges that Kaytel is the source of those bootleg DVDs,[10] and that Elmaleh used Richer, among others, to distribute the copies in New York.[11]  Kaytel, Elmaleh and Richer deny any involvement in the bootlegging

---

[7]     See id. ¶¶ 26-27.

[8]     See id. ¶ 16.

[9]     See Plaintiff's Memorandum of Law in Opposition to Motions to Dismiss ("Opp. Mem.") at 1.

[10]     See Compl. ¶ 19 (alleging that Kaytel, through a series of subterfuges, authorized the manufacture and distribution of bootleg Studio A DVDs in New York).

[11]     See id. ¶ 18; see also Affidavit of Jacky Elkeslassy (former employee of Kaytel) in Support of Plaintiff's Opposition to Motions to Dismiss ("Elkeslassy Aff.") at 10-12 (alleging that Richer made approximately ten trips to New York on behalf of Elmaleh and Kaytel).

-3-

operation,[12] and they deny contacts with New York sufficient to give rise to personal jurisdiction in this Court.[13]

Studio A alleges that while Kaytel might not be selling DVDs in New York under its own name, Kaytel has been doing business in New York through subsidiary businesses. Specifically, Studio A alleges that Elmaleh set up Jacky's One Stop Distribution ("Jacky's") to hide Kaytel as the true source of the DVDs.[14] To support this allegation, Studio A submitted a series of cancelled checks to show that checks made out to Jacky's were deposited first into Jacky's bank account and then identical amounts were deposited into Kaytel's bank account.[15] Studio A also alleges that Elmaleh conducted business in New York and cultivated business relationships with New York entities.[16]

------

[12]    See Richer Decl. ¶¶ 3d-3g; see also Elmaleh Decl. ¶¶ 3c-3f.

[13]    See Elmaleh Decl. ¶ 7 (asserting that neither Kaytel nor Elmaleh has ever distributed, sold or offered to sell any DVDs in the United States or New York); see also Richer Decl. ¶¶ 5-6.

[14]    See Elkeslassy Aff. ¶¶ 5-6 (asserting that Elmaleh set up and controlled Jacky's, but took steps to ensure that the company appeared unrelated to Elmaleh or Kaytel).

[15]    See Attachments to Opp. Mem.; see also Declaration of Jacky Elkeslassy in Support of Plaintiff's Opposition to Motions to Dismiss ("Elkeslassy Decl.") ¶ 3.

[16]    See Deposition of Ben-Zion Suky (principal of Direct Distributors, LLC, a New York company), dated September 28, 2006 ("9/28 Suky Dep.") at 5-6,

Studio A asserts that Richer helped Elmaleh manufacture and distribute the allegedly infringing DVDs in New York in three ways. *First*, Richer signed Intellectual Property Release forms, which allowed the allegedly infringing DVDs to be manufactured.[17] *Second*, Richer signed the United States Customs declarations, which allowed those DVDs to be brought into New York.[18] *Third*, on at least ten occasions, Richer personally drove the DVDs into New York.[19]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

A court must dismiss an action against a defendant over which it lacks personal jurisdiction.[20] "Prior to discovery, a plaintiff may defeat a motion

---

12 (stating that Elmaleh came to New York to discuss business with Suky); *see also* Deposition of Ben-Zion Suky, dated January 17, 2006 ("1/17 Suky Dep.") at 24-25; Elkeslassy Aff. ¶ 9 (noting that Elkeslassy arranged the first meeting between Suky and Elmaleh in New York).

[17]    *See* Affidavit of Sabin Brunet, President of Diadem Digital, in Support of Plaintiff's Opposition to Motions to Dismiss ("Brunet Aff.") ¶ 7.

[18]    *See* Elkeslassy Decl. ¶ 4.

[19]    *See* Elkeslassy Aff. ¶¶ 10, 12.

[20]    *See* Fed. R. Civ. P. 12(b)(2); *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 230 F. Supp. 2d 403, 406 (S.D.N.Y. 2002) ("Upon motion, a court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction.").

to dismiss based on legally sufficient allegations of jurisdiction."[21]   At this early

stage in the proceedings, the plaintiff's averments of jurisdictional facts are to be

taken as true.[22]   The plaintiff may prevail "notwithstanding a controverting

presentation by the moving party."[23]   On the other hand, "where the parties have

conducted *extensive discovery* regarding the defendant's contacts with the forum

state, but no evidentiary hearing has been held — 'the plaintiff's prima facie

showing, necessary to defeat a jurisdiction testing motion, must include an

averment of facts that, if credited by [the ultimate trier of fact], would suffice to

establish jurisdiction over the defendant.'"[24]

      Where there are conflicting factual claims, the court may choose to

rely on the pleadings and affidavits or may choose to hold an evidentiary

---

[21]    *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

[22]    *See id.* (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d. 194, 197 (2d Cir. 1990)).

[23]    *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993). *Accord In re Ski Train Fire*, 230 F. Supp. 2d at 406 (citing *Cornell v. Assicurazioni Generali, S.p.A.*, Nos. 98 Civ. 9186, 97 Civ. 2262, 2000 WL 284222, at *1 (S.D.N.Y. Mar. 16, 2000)) (plaintiff may prevail "even if the moving party makes contrary allegations which controvert [plaintiff's] prima facie case").

[24]    *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1995) (quoting *Ball*, 902 F.2d at 197) (emphasis added).

hearing.[25]

> If the court chooses to rely on pleadings and affidavits, the plaintiff need only make a *prima facie* showing of personal jurisdiction over defendant. But if the court holds an evidentiary hearing – in a manner similar to determining the issue at trial – the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence.[26]

## B.    Personal Jurisdiction

The determination of whether a court has personal jurisdiction over a defendant is a two-step process. *First*, "the court must look to the long-arm statute of the forum state."[27] *Second*, even if there is jurisdiction under the long-arm statute, the court must decide whether the exercise of that jurisdiction comports with the requirements of the Due Process Clause of the Constitution.[28]

### 1.    New York Law

Studio A is alleging specific jurisdiction under section 302 of the New York Civil Practice Law and Rules ("CPLR").[29] Subsection 302(a)(1) provides that a court may exercise personal jurisdiction over a non-resident

---

[25]    *See CutCo Indus. Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986).

[26]    *Id.*

[27]    *Bensusan Rest. Corp. v. King*, 126. F.3d 25, 27 (2d Cir. 1997).

[28]    *See id.*

[29]    *See* Opp. Mem. at 2-10.

-7-

defendant who, "in person or through an agent, transacts any business within the state or contracts anywhere to supply goods or services in the state."  To establish personal jurisdiction pursuant to this subsection, a plaintiff must show that the defendant transacted business in New York and that the claim arises from that transaction.[30]

A non-domiciliary transacts business in New York when he "purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws."[31]  In determining whether a defendant has transacted business in New York, courts should look to the "totality of the circumstances."[32]  The following factors should be considered: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York; (3) whether a choice-of-law provision in that contract points to New York; and (4) whether the contract requires payments or notices to be sent to New

---

[30]     *See Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).

[31]     *CutCo Indus. Inc.*, 806 F.2d at 365 (citation omitted).

[32]     *Agency Rent A Car Sys.*, 98 F.3d at 29.

York.[33]  "The showing necessary for a finding that defendant transacted business and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business,' which renders the defendant subject to suit on even an unrelated cause of action."[34]

Even if personal jurisdiction exists over a corporation, it does not follow that jurisdiction necessarily exists over the corporation's employees.[35]  The plaintiff must "convince the court that [the company] engaged in purposeful activities in this State in relation to [the plaintiff's cause of action] for the benefit of and with the knowledge and consent of the [individual employee] defendants and that they exercised *some control* over [the company] in the matter."[36]

Subsection 302(a)(2) confers jurisdiction over a non-resident

---

[33]     *See CutCo Indus. Inc.*, 806 F.2d at 365.  Even though this case involves tort claims, rather than contract claims, Elmaleh and Suky do have an ongoing business relationship involving the sale of goods.  As a result, the *CutCo* factors remain relevant to the analysis of personal jurisdiction.

[34]     *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (citations omitted).

[35]     *See Department of Econ. Devel. v. Arthur Anderson & Co.*, 747 F. Supp. 922, 928-29 (S.D.N.Y. 1990) (finding no jurisdiction when the employee had not personally traveled to New York).

[36]     *Madden v. International Ass'n of Heat & Frost Insulators & Asbestos Workers*, 889 F. Supp. 707, 711 (S.D.N.Y. 1995) (citing *Kruetter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)).

defendant who commits a tortious act within New York — an out-of-state act having effects in New York State does not suffice.[37]  The Second Circuit recently reaffirmed that, even in infringement cases, a defendant must be physically present in New York at the time the tort occurs to give rise to jurisdiction under subsection 302(a)(2).[38]  Because infringement occurs where the passing off takes place,[39] that passing off would have to occur in New York and the individual defendants would have to be present at that time.

Subsection 302(a)(3) confers personal jurisdiction over a non-resident defendant who commits a tortious act outside New York that causes injury in New York.  The plaintiff must prove that the defendant "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives

---

[37]   *See Maranga v. Vira*, 386 F. Supp. 2d 299, 310 (S.D.N.Y. 2005); *see also Bensusan*, 126 F.3d at 29.

[38]   *See Bensusan*, 126 F.3d at 29 (noting that the physical presence requirement "has not been adopted by every district judge in the Second Circuit," but finding physical presence required by New York Court of Appeals precedent). *But see Banco Nacional Ultramarino, S.A. v. Chan*, 641 N.Y.S.2d 1006, 1010 (Sup. Ct. N.Y. Co. 1996), *aff'd*, 659 N.Y.S.2d 734 (1st Dep't 1997) (for purposes of subsection 302(a)(2), "the emphasis should be on the locus of the tort, not whether [the] defendant was physically here when the tortious act occurred" and finding that New York Court of Appeals precedent is not to the contrary).

[39]   *See Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956).

-10-

substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."[40]  To satisfy the first element, the defendant must make a "discernable effort to directly or indirectly serve the New York market."[41]  As to the second element, the test for "reasonably expects" is objective, not subjective.[42]  The out-of-state act must be the proximate cause of the harm in New York; that is, the act must be "so close to the injury that reasonable people would regard it as a cause of the injury."[43]

### 2.    Due Process

The Fourteenth Amendment due process inquiry has two components: *first*, the court must determine whether the defendant has minimum contacts with New York sufficient to justify the exercise of personal jurisdiction over the defendant; and *second*, the court must determine whether the exercise of personal

---

[40]     N.Y. C.P.L.R. § 302(a)(3) (2006).

[41]     *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (citation omitted).

[42]     *See id.*

[43]     *Art Leather Mfg. Co., Inc. v. Albumx Corp.*, 888 F. Supp. 565, 568 (S.D.N.Y. 1995).

jurisdiction is reasonable, thus comporting with "traditional notions of fair play and substantial justice."[44] "The two prongs of the inquiry are interrelated, such that a weak showing of minimum contacts requires a stronger demonstration of reasonableness."[45] The converse is also true.

The minimum contacts requirement ensures that a defendant is not haled into court "solely as a result of random, fortuitous, or attenuated contacts."[46]

> To establish the minimum contacts necessary to satisfy specific jurisdiction, the plaintiff must show that his claim arises out of or relates to defendant's contacts with the forum state. The plaintiff must also show that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there.[47]

"[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the

---

[44]     *Metropolitan Life*, 84 F.3d at 567-78 (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[45]     *Afloat in France, Inc. v. Bancroft Cruises Ltd.*, No. 03 Civ. 917, 2003 WL 22400213, at *5 (S.D.N.Y. Oct. 21, 2003).

[46]     *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotations omitted).

[47]     *Schottenstein v. Schottenstein*, No. 04 Civ. 5851, 2004 WL 2534155, at *7 (S.D.N.Y. Nov. 8, 2004) (citing *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998)).

presence of some other considerations would render jurisdiction unreasonable."[48]

The reasonableness factors include:  (1) the burden that the exercise of personal

jurisdiction will impose on the defendant; (2) the interests of the forum state in

adjudicating the case; (3) the plaintiff's interest in obtaining convenient and

effective relief; (4) the judicial system's interest in efficient resolution; and (5) the

state's interest in promoting substantive social policies.[49]

## IV.   DISCUSSION

Kaytel, Elmaleh and Richer contend that they have not transacted any

business in the United States, in general, or in New York State, in particular.  They

contend that they have not committed any tortious acts, either inside or outside of

New York, that have caused harm in New York.[50]  Kaytel, Elmaleh and Richer

further assert that the exercise of personal jurisdiction over them would offend the

Due Process Clause.[51]

---

[48]   *Burger King*, 471 U.S. at 477.

[49]   *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002).

[50]   *See* Kaytel's and Elmaleh's Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Kaytel Mem.") at 2; *see also* Alain Richer's Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Richer Mem.") at 2.

[51]   *See* Kaytel Mem. at 30-31; *see also* Richer Mem. at 28-29.

**A.     New York Law**

Because Studio A has had only limited discovery and the court has

not held an evidentiary hearing, Studio A need only make a prima facie showing

as to personal jurisdiction.  Kaytel, Elmaleh and Richer concede that the prima

facie showing standard applies here.[52]  In determining whether Studio A has

alleged a prima facie case, this Court will accept Studio A's allegations as true

even though Kaytel, Elmaleh and Richer have made contrary assertions.[53]

**1.     Subsection 302(a)(1)**

Studio A has made a prima facie showing that Kaytel and Elmaleh

transact business in New York.  Studio A submitted documents tending to show

that Elmaleh ordered Studio A DVDs from Diadem Digital, Inc. without obtaining

the proper licenses to do so.[54]  Studio A also submitted evidence that Elmaleh

created Jacky's, naming that business after Kaytel employee Jacky Elkeslassy, for

the purpose of distributing those DVDs.[55]  Studio A alleged that Elmaleh visited

---

[52]     *See* Kaytel Mem. at 1; *see also* Richer Mem. at 1.

[53]     *See In re Ski Train Fire*, 230 F. Supp. 2d at 406 (citing *Cornell*, 2000 WL 284222, at *1 ("[P]laintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima facie case.").

[54]     *See* Brunet Aff. ¶¶ 18-19.

[55]     *See id.*

-14-

New York and solicited Ben-Zion Suky, the principal of a New York business,

Direct Distributors, to buy the DVDs[56] and that Elmaleh met Suky every three to

four weeks to discuss doing further business.[57]  Suky testified that Elmaleh would

sometimes come to New York to pick up checks directly from him.[58]  Studio A

offered evidence that Richer, and other Kaytel employees, transported the DVDs

from Montreal, Canada to New York in a van.[59]

　　　　　The totality of the circumstances and an analysis of the *CutCo* factors

reveal that Kaytel and Elmaleh have transacted business in New York sufficient to

give rise to personal jurisdiction under subsection 302(a)(1).  Elmaleh had an

ongoing business relationship with Suky for the purpose of selling DVDs in New

York.  Although there was no written contract between Elmaleh and Suky or

choice of law provision pointing to New York for the resolution of disputes,

Elmaleh repeatedly visited and called New York to negotiate additional sales with

Suky, and Elmaleh ordered Kaytel's employees to bring the DVDs to New York.

---

[56]　　　*See* 9/28 Suky Dep. at 5.

[57]　　　*See* Deposition Transcript of Ben-Zion Suky, dated January 26, 2006 ("1/26 Suky Dep.") at 64-65; *see also* 9/28 Suky Dep. at 11 (stating that Elmaleh called Suky "[o]nce a month" for "maybe a year and a half").

[58]　　　*See* 1/26 Suky Dep. at 65.

[59]　　　*See* 9/28 Suky Dep. at 7-8; *see also* Elkeslassy Aff. ¶ 10.

Finally, Elmaleh picked up checks from Suky, and checks made out to Jacky's were first deposited into Jacky's bank account and then identical amounts were deposited into Kaytel's. Thus, at least three of the four *CutCo* factors have been satisfied.[60]

### 2.    Subsection 302(a)(2)

This Court also has jurisdiction over Kaytel and Elmaleh under subsection 302(a)(2). Although Elmaleh did not bring the infringing DVDs to New York himself, he directed his agents to do so. There is also jurisdiction over Richer under subsection 302(a)(2). Studio A has made a prima facie showing that Richer came to New York approximately ten times to deliver the allegedly infringing DVDs. Thus, Richer was present in New York at the time of the passing off, giving rise to personal jurisdiction over him under this subsection.

### 3.    Subsection 302(a)(3)

Kaytel and Elmaleh have also committed tortious acts outside of New York State that have had effects within New York, giving rise to personal jurisdiction under subsection 302(a)(3). As discussed above, the tort in an infringement case occurs where the passing off occurs.[61] Elmaleh regularly

---

[60]    *See CutCo Indus. Inc.*, 806 F.2d at 365.

[61]    *See Vanity Fair Mills*, 234 F.2d at 639.

solicited business in New York, visiting Suky every three to four weeks and

calling him monthly, and Kaytel derived substantial revenue from international

commerce.[62]  A reasonable person would have realized that these actions would

have consequences in New York.  Thus, Studio A has made a prima facie showing

that Kaytel and Elmaleh made a "discernable effort to directly or indirectly serve

the New York market."[63]

### B.    Due Process

Studio A has alleged facts sufficient to demonstrate that Kaytel,

Elmaleh and Richer have minimum contacts with New York.  If Kaytel, Elmaleh

and Richer did sell infringing copies of Studio A's works to Suky's New York

corporation, Direct Distributors, they reasonably should have foreseen being haled

into a New York court.

Given that Studio A has made a prima facie showing of purposeful

availment, the burden is on Kaytel, Elmaleh and Richer to show "the presence of

some other considerations [that] would render jurisdiction unreasonable."[64]  They

---

[62]    *See* Declaration of Jules Zalon, counsel for Studio A, in Opposition to
Motions to Dismiss at 3 (asserting that Elmaleh grossed $556,000 from Suky's
purchases through Jacky's).

[63]    *Kernan*, 175 F.3d at 241(citation omitted).

[64]    *Burger King*, 471 U.S. at 477.

-17-

have failed to meet that burden.  To the contrary, Studio A has shown that the

exercise of personal jurisdiction over Kaytel, Elmaleh and Richer, conferred by the

New York long-arm statute, would be reasonable and would not violate

"traditional notions of fair play and substantial justice."  *First*, the difficulties

associated with defending a suit in New York, given the "conveniences of modern

communication and transportation,"[65] are not substantial.[66]  *Second*, New York has

an interest in ensuring that bootleg DVDs are not sold within its borders.  *Third*,

while Studio A, a California corporation, does not have a particularly strong

interest in litigating in New York, Studio A does have a strong interest in ensuring

this case gets litigated somewhere.  Kaytel and Elmaleh have successfully avoided

being subject to suit in another jurisdiction.[67]  *Fourth*, at least one potential

witness, Ben-Zion Suky, is located in New York.  While Elmaleh, Kaytel and

Richer are located in Canada, both Elmaleh's and Richer's frequent business trips

to New York indicate that it is not particularly inconvenient for them to travel

here.  *Fifth*, the policies of protecting citizens of New York from the sale of

---

[65]     *Metropolitan Life*, 84 F.3d at 574.

[66]     *See Burger King*, 471 U.S. at 483 (stating that inconvenience must be
substantial to bar jurisdiction under the due process clause).

[67]     *See* Opp. Mem. at 6 (explaining that a similar case filed in the District
of New Jersey was voluntarily dismissed for lack of personal jurisdiction).

-18-

infringing goods and of protecting its courts from fraud would be advanced by allowing this action to proceed in a New York court.[68]

## V.    CONCLUSION

For the foregoing reasons, the motions to dismiss are denied.  The Clerk of the Court is directed to close these motions [Nos. 13 and 15 on the Docket Sheet].  A conference is scheduled in this matter for February 21, 2007, at 4:30 p.m. in courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          February 8, 2007

---

[68]    If Kaytel, Elmaleh and Richer indeed have submitted fraudulent affidavits, as alleged by Studio A, then sanctions may well be warranted.

-19-

## - Appearances -

**For Plaintiff Studio A Entertainment, Inc.:**

Jules D. Zalon, Esq.
20 Curtis Avenue
West Orange, New Jersey 07052
Telephone: (973) 324-2444

**For Defendants 144942 Canada, Inc. d/b/a Kaytel Video Distribution, Alain Elmaleh and Alain Richer:**

Ezra Sutton, Esq.
Ezra Sutton, P.A.
Plaza 9, 900 Route 9
Woodbridge, New Jersey 07095
Telephone: (732) 634-3520